IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-03180-PAB-KMT

CHRISTOPHER P. ROBILLARD,

     Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF WELD COUNTY COLORADO,
THE OFFICE OF THE WELD COUNTY CORONER/MEDICAL EXAMINER,
PATRICK C. ALLEN, M.D., in his individual capacity,
MIKE WARD, in his individual capacity, and
JAMES A. WILKERSON IV, M.D., in his individual capacity,

     Defendants.

---

## ORDER

---

     Plaintiff Christopher P. Robillard initiated this action on December 7, 2011 [Docket No. 1]. Plaintiff works as a medical investigator ("MI") for defendant The Office of the Weld County Coroner/Medical Examiner ("WCCO"). He alleges that he has not been paid in accordance with the Fair Labor Standards Act ("FLSA"), *see* 29 U.S.C. § 201 *et seq.*, the Colorado Wage Claim Act ("CWCA"), *see* Colo. Rev. Stat. § 8-4-101 *et seq.*, and his employment contract. Plaintiff also asserts a claim pursuant to the Equal Protection Clause of the Fourteenth Amendment. The matter is now before the Court on defendants' motion for partial dismissal of claims [Docket No. 13] pursuant to Fed. R. Civ. P. 12(b)(6). The motion is fully briefed and ripe for disposition.[1]

---

[1]The Court will address any additional background facts below only to the extent relevant to the resolution of defendants' motion.

## I.  STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted).  In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).  At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either

2

direct or inferential allegations respecting all the material elements necessary to sustain

a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks

and citation omitted).

## II.  DISCUSSION

### A.  CWCA Overtime Claim

As an initial matter, defendants argue, *see* Docket No. 13 at 9-10, and plaintiff

concedes, that the fourth claim for relief alleging a violation of the CWCA for failure to

pay overtime "should be dismissed as to all Defendants[.]"  Docket No. 24 at 11.

Therefore, the Court will grant defendants' motion to that extent.

### B.  FLSA Employers

Defendants also argue that the complaint fails to allege facts demonstrating that

defendants Patrick C. Allen, M.D., and James A. Wilkerson IV, M.D. are "employers"

subject to suit under the FLSA.  Pursuant to the FLSA, an "'[e]mployer' includes any

person acting directly or indirectly in the interest of an employer in relation to an

employee . . . ."  29 U.S.C. § 203(d).  In his complaint, plaintiff sues both of these

defendants, who served as the Coroner for Weld County at different times during

plaintiff's employment, in their individual capacities.

To determine whether a defendant is an employer, the Tenth Circuit applies the

economic reality test.  *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440

(10th Cir. 1998).  "The economic reality test includes inquiries into whether the alleged

employer has the power to hire and fire employees, supervises and controls employee

work schedules or conditions of employment, determines the rate and method of

payment, and maintains employment records." *Id.* (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)).  Although one might assume that these defendants had such responsibilities in relation to plaintiff in light of their positions, the complaint is silent regarding the structure of the WCCO and the nature of the coroner's responsibilities.  Therefore, plaintiff has failed to state an FLSA claim as to defendants Allen and Wilkerson.[2]

### C. Equal Protection

Plaintiff asserts an equal protection claim against defendants, alleging that "[d]efendants classified WCCO employees into two distinct categories comprised of 1) WCCO employees that signed the [Compensation Time Agreements ("Comp Time Agreements")] 2) WCCO employees that did not sign the Comp Time Agreement," and that those who "did not sign the Comp Time Agreements or later opted out of the Comp Agreement [sic] were not permitted to work overtime."  Docket No. 1 at 26, ¶¶ 150-51. Plaintiff, however, fails to allege facts indicating that similarly situated individuals were treated differently.[3]  *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands

---

[2]In his response brief, plaintiff identifies additional facts that he contends support a finding that Allen and Wilkerson are employers.   Because these facts do not appear in his complaint and there being no pending motion to amend, the Court has not considered these facts.

[3]Plaintiff does not allege that he is a member of a suspect class or that any fundamental right is implicated.  *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes [an individual] on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.").

4

that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."); *cf. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 598 (2008) ("[T]he class-of-one theory of equal protection does not apply in the public employment context.").  Rather, plaintiff alleges that two groups that are situated differently, i.e., by their own decision regarding which contract to sign, are treated differently pursuant to those contracts.  The Court cannot discern the factual basis for him to proceed on an equal protection claim under such circumstances.

### D.  **FLSA Overtime Claim**

"The FLSA requires employers to pay covered employees overtime equal to one-and-one-half times their normal pay for work in excess of forty hours in a week." *Lederman v. Frontier Fire Protection, Inc.*, 685 F.3d 1151, 1155 (10th Cir. 2012) (citing 29 U.S.C. § 207).  Defendants contend that plaintiff's allegations regarding failure to receive overtime pay are too conclusory to support a claim pursuant to § 207.  Plaintiff, however, describes the nature of the obligations that were imposed upon him when he was on-call outside of normal business hours and contends that these restrictions require WCCO to pay him overtime.  Defendants respond that the "FLSA does not require WCCO to pay an idle, on-call MI," because the "test for payment of such wages is whether the waiting time is spent predominantly for the employer's benefit or the employee's."  Docket No. 31 at 3 (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)).  In addressing that issue, the Court must consider "the agreement between the parties, the nature and extent of the restrictions, the relationship between the services

5

rendered and the on-call time, and all surrounding circumstances." *Boehm v. Kansas City Power and Light Co.*, 868 F.2d 1182, 1185 (10th Cir. 1989). "Where, as here, the employee is not required to remain on the employer's premises, the critical inquiry is whether the employee is able to use the time effectively for her own purposes." *Knapp v. America West Airlines*, 207 F. App'x 896, 898 (10th Cir. 2006).[4]

Plaintiff alleges that he is required to work six 24-hour shifts per month as the primary on-duty MI. The primary on-duty MI is the first to be called in the event of a death during the shift. Upon receiving such a call, the primary on-duty MI must return the call within five minutes. If the death is one requiring an investigation, the MI must be "in route to [the] death scene within 30 minutes after the telephone discussion." Docket No. 1 at 9, ¶ 46. While on-duty, an "MI must remain in close proximity to the county" and the "county vehicle." Docket No. 1 at 9, ¶¶ 48, 49. Furthermore, the MI "must maintain a high state of readiness including hygiene, having a County supplied uniform to respond to [a] call," as well as having a "WCCO vehicle prepared and fully fueled." Docket No. 1 at 9, ¶ 44. During six 24-hour shifts each month, plaintiff is in backup on-duty status.[5] Backup on-duty MIs only receive calls if the primary on-duty MI does not respond to a call or is committed to another case at the time. Otherwise, all of the foregoing readiness and response requirements apply to the backup on-duty MI.

---

[4]"While courts have indicated that '[w]hether and to what extent employees are able to use on-call time for personal activities is a question of fact,' they have also stated, 'whether limitations on the employees' personal activities while on-call are such that on-call waiting time would be considered compensable overtime under the FLSA is a question of law which we review de novo.'" *Knapp*, 207 F. App'x at 898 (citations omitted).

[5]Plaintiff is further scheduled for six administrative shifts per month.

"While the Court certainly acknowledges that Plaintiff's time on-call somewhat restricted his personal activities; the test is not whether there was some restriction on Plaintiff's personal activities.  Rather the test is whether Plaintiff's on-call time was spent predominantly for the benefit of his employer." *Andrews v. Town of Skiatook, Okl.*, 123 F.3d 1327, 1332 (10th Cir. 1997).  The Tenth Circuit has previously addressed situations comparable to that of plaintiff and has found that such employees are not entitled to overtime pay.  For instance, in *Andrews*, the Tenth Circuit concluded that an employee was not entitled to overtime pay for time on-duty subject to requirements that the employee be available by pager, be in clean and appropriate clothing, abstain from alcohol, and be able to "respond to the ambulance station within five to ten minutes." *See id.* at 1229-30, 1332; *Gilligan v. City of Emporia, Kan.*, 986 F.2d 410, 411 (10th Cir. 1993) (finding the following conditions did not require overtime payment: "(1) he must respond to a call within thirty minutes; (2) he could not consume alcoholic beverages; (3) he was subject to discipline for failure to respond to a call; and (4) he was required to stay within the limits of his pager, or leave a telephone number where he could be reached"); *see also Armitage v. City of Emporia, Kan.*, 982 F.2d 430, 432-33 (10th Cir. 1992); *Norton v. Worthen Van Serv., Inc.*, 839 F.2d 653, 654-56 (10th Cir. 1988).

Courts have found that, when combined with such restrictions, the frequency of being called may require an employer to pay overtime.  For example, in *Renfro v. City of Emporia, Kan.*, 729 F. Supp. 747 (D. Kan. 1990), the court concluded that employees who were called back to work an average of 3 to 5 times, and as many as 13 times, per

7

shift were entitled to overtime. The Court found that "the frequency with which Emporia firefighters are subject to call-backs readily distinguishes this case from cases which have held that on-call time is non-compensable." *Id.* at 752. The Tenth Circuit in *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128 (10th Cir. 2000), found that employees who were on-call during all non-business hours and received "an average of three to five alarms per night, each requiring on average forty-five minutes of work" were entitled to overtime pay. *Id.* at 1131, 1135.

Here, plaintiff alleges that he received an average of 12 "case-related calls" during each 24-hour shift "as the on-duty MI" in 2009 and 14 such calls per 24-hour shift in 2010. *See* Docket No. 1 at 12, ¶¶ 66, 67. Plaintiff, however, fails to indicate to what extent these calls occurred during his primary or backup on-duty shifts, required him to travel to the scene of death, or occurred during any time "in excess of forty hours in a week" not otherwise compensated pursuant to the Comp Time Agreement. Consequently, the complaint lacks a factual basis for determining that plaintiff was subject to call response and reporting requirements that triggered an obligation to pay him overtime pursuant to the FLSA.

Plaintiff's only other basis for the overtime claim is his contention that defendants misused the compensation time system. There are no allegations, however, that he was not permitted to use compensation time he actually accrued. Furthermore, plaintiff fails to identify any authority for the proposition that WCCO was required to permit employees to work extended hours so as to accrue compensation time without limitation.

### E.  **FLSA Retaliation Claim**

Plaintiff alleges that, after he "voiced concerns regarding compensation for on-duty time and the application of the Comp Time Agreement," he suffered a poor employee review, was "arbitrarily sent home from work to keep from accumulating Comp Time," and was required to receive Peace Officer Standards and Training ("POST") certification which required extensive time in trainings without compensation for his time or costs.[6]  *See* Docket No. 1 at 22-23, ¶¶ 131-137.  Pursuant to the FLSA, an employer may not "discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."  29 U.S.C. § 215(a)(3); *see Kasten v. Saint-Gobain Performance Plastics Corp.*, --- U.S. ----, 131 S. Ct. 1325, 1329 (2011) (oral complaints protected by § 215(a)(3)).  Plaintiff's allegations of retaliation are sparse and provide virtually no non-conclusory basis to conclude that he suffered any retaliation due to his complaints.  The allegations are unclear regarding the chronology of events, appear to largely relate to policies impacting all employees of WCCO, and provide no basis to draw the inference that any of his treatment resulted from the fact that he communicated certain undefined "concerns."  Therefore, the Court

---

[6]Plaintiff discusses this failure to be compensated for POST requirements only in the context of describing the alleged retaliatory conduct.  Plaintiff's FLSA overtime claim, by contrast, appears limited to defendants' failure to pay him "overtime for all on-duty hours worked in excess of forty hours per week while employed with the WCCO." Docket No. 1 at 20, ¶ 120; *see id.* at 20, ¶ 119 (describing his work requirements as six 24-hour primary on-duty shifts, six 24-hour backup on-duty shifts, and six administrative shifts per month).

9

finds that plaintiff has failed to state a plausible FLSA retaliation claim.

### F.  Breach of Contract

Plaintiff contends that WCCO breached the Comp Time Agreement.  Plaintiff, however, fails to identify any obligation imposed on WCCO by that agreement which was breached.  Plaintiff attempts to read into the agreement a requirement that he be permitted to accrue as much compensation time as he wishes, but cites no basis for imposing such an obligation on WCCO.  Consequently, plaintiff's breach of contract allegations fail to state a claim.

### G.  Remaining Claims

Defendants describe the present motion as a motion for *partial* dismissal of plaintiff's claims.  *See* Docket No. 13 at 1; *see id.* at 1, n.1 (noting that they filed a partial answer to plaintiff's FLSA claims on behalf of defendants The Board of County Commissioners and Mark Ward).  In light of the foregoing discussion, however, the Court cannot determine what remains of plaintiff's complaint.  Therefore, the Court will not, in this order, resolve either defendants' argument that WCCO is not a proper party to this case or defendants' objections [Docket No. 33] to the magistrate judge's denial of their motion to stay pending determination of qualified immunity [Docket No. 15].  Moreover, the Court will require the parties to address the question, based on the foregoing rulings, of what remains of plaintiff's complaint.  If a party believes this order applies to all the pending claims, it shall indicate what, if any, additional filings are required for the Court to resolve the remaining claims.  *Cf.* Fed. R. Civ. P. 12(c) ("After the pleadings are closed – but early enough not to delay trial – a party may move for

judgment on the pleadings.").

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' motion for partial dismissal [Docket No. 13] is

GRANTED.  It is further

**ORDERED** that defendants' motion to supplement [Docket No. 34] their motion

for partial dismissal is DENIED as moot.  It is further

**ORDERED** that, within 14 days of entry of this order, the parties shall indicate

which claims, and as to which defendants, survive this order and, if any, whether any

such claims are now ripe for disposition.

DATED September 26, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge